Illinois Appellate Court, First District Court is now in session. The First Division, Justice Carl Anthony Walker presiding. Case number 1-8-1468, People v. Sean Savage. Okay, good afternoon everyone. I'm Justice Walker and I have here with me Justice Hyman and Justice Coghlan and I'd like to have you each to introduce yourselves. My name is Andrew Moore. I'm here representing Mr. Savage. Good afternoon, Janet Mahoney on behalf of the people of the state of Illinois. Okay, and Mr. Moore, how much time do you need? I think about 15 minutes is fair and I'd like to reserve about three minutes for rebuttal. Sure, and Ms. Mahoney, how much time do you need? I believe mine will be about 10-12 minutes long. Okay, all right. Well, we generally allow you about 20 minutes each for your total time and if we prevent you from getting to all of your arguments because of our questions and you have something really important that you wanted to share with us, please let us know and we'll grant you time to share any points that you really wanted to make and you didn't get a chance to because of our questions. Okay, with that, we'll get started. Mr. Moore, we'll start with you. Okay, again, my name is Andrew Moore and I represent Sean Savage in his appeal. Mr. Savage was denied his right to a fair trial because there was a Doyle violation where the judge allowed the state to impeach him over his post-arrest silence and secondly, the judge relied on impeachment evidence that was not proven up in finding Mr. Savage not credible. These violations separately require a remand for a new trial. However, this court can also hold that the cumulative error of both require a remand. So, the first issue here is that Mr. Savage was subjected to a cross-examination that was a textbook Doyle violation. Mr. Savage testified that he did not commit the burglary but rather that he was mistaken by Brown as the burglar and Mr. Brown ended up taking $20 from his pocket after punching him unconscious. During cross-examination, the state badgered Mr. Savage for three pages of transcript as to why he didn't tell a detective this story during a custodial interrogation long after his arrest. Well, did Mr. Savage volunteer on direct that he had a conversation with a police officer? He had a conversation with the arresting officer pre-arrest but that wouldn't waive his Miranda rights post-arrest, you know, hours later because the questioning that we're concerned with here is the interrogation that occurred at the hospital long after his arrest. We don't even know when he was Mirandized, right? Or if he was. So, it's likely that he was Mirandized but like you said, we don't know exactly when it occurred. The interrogation occurred long after his arrest and it's a standard police procedure and, you know, it's a constitutional requirement to Mirandize somebody before entering into an interrogation such as this. But even in the unlikely event that the detective failed to Mirandize him, it doesn't really matter in this case because the state of Illinois protects pre-Miranda post-arrest silence as well. And it's also important to note that Mr. Savage himself invoked his rights. Don't we want to look at whether this is harmless or not? Yeah, that's really what this comes down to. So, the state can see... Try to explain to me then how this is a close case. This case is closely balanced. It's really a classic closely balanced case because it comes down to basically two witnesses, Mr. Brown and Mr. Savage, both with believable stories and there's no extrinsic evidence tending to prove either one. If you believe Mr. Savage, he's innocent and if you believe Mr. Brown, he's guilty. It's a it's a classic. What about the physical evidence of the stuff that was found in the pockets of the defendants? So, that was a situation where the officer searched Mr. Savage based on what Brown had told him. And basically, as he pulled things out of Mr. Savage's pockets, Brown said, that's mine, that's mine, that's mine. There's nothing... to make all this up that someone's breaking into his car at four in the morning or whatever it was. Doesn't that seem a little... I don't think that he made anything up. I think that it's just as believable that his car did get broken into. Things were taken and when he came down to check on it, Mr. Savage was the closest person in the area. So, you think he's lying about Mr. Savage being in his car and is... I think his credibility is definitely questionable considering he seems to remember that a diamond ring was recovered from Mr. Savage, yet an officer of 18 years of the police force doesn't recall it and didn't inventory it. But there's a lot of... Isn't that besides the point? Because the other items, there's no question they belong to Mr. Brown, is there? There is a question. Pinky ring alone, just the other items. The only person who's saying those things belong to him is Brown himself. And if he's, you know, gotten... The inventory of the items, there's nothing that shows that they inventoried them and took them from Mr. Brown. No, they took them out of Mr. Savage's pockets, but these are just common items that anybody could have. There's nothing about this evidence that links them to Brown other than Brown's word himself. So, that's why it comes back to... But the judge can accept the testimony or not, right? He can look at the credibility, which the judge did, and he found Mr. Brown credible and he found Mr. Savage not. And that's really what this whole appeal is about. It's really... Like you said, everything comes down to credibility. In both of these errors, the Doyle violation and the impeachment failing to prove up impeachment go right to Mr. Savage's credibility. And in fact, in issue two, the impeachment that wasn't proven up, the judge listed specifically as a reason why he found Mr. Savage not credible. So, really, this appeal as a whole is really attacking... I disagree with that. What do you base that argument on? As a matter of fact, the judge sustained the defense objection during closing argument about that very point. About the Doyle violation? Are you... About the Doyle violation? Yes. There was an objection during closing argument when the prosecutor referenced that. The judge sustained it. The prosecutor continued to make the same argument, incredibly, but nevertheless, the judge had sustained it. But that's true. He did sustain a single objection throughout this entire trial, but that doesn't... Well, there wasn't another objection made after that. There was four objections made to the improper questioning that the judge overruled. And he actually actively participated in getting Mr. Savage to testify regarding what led to the Doyle violation. And he also denied a motion for a new trial and clearly said that... Or said that a Doyle violation clearly did not occur. So... Is there anything? Those things point more... Oh, excuse me? No, go ahead. I'm sorry. Oh, I'm just... The overruled objections during the questioning, the fact that the judge participated in the questioning, enforcing Mr. Savage to answer, and also denying the motion for a new trial is more a window into the judge's mindset than a single sustained objection in closing. Okay. Well, then I think something is much more revealing of the judge's mindset. And that is what the judge said in finding Mr. Savage guilty. And I don't see any references to Mr. Savage's post-arrest silence. There's nothing in the record that even suggests that the judge relied on the silence in any way, is there? There's no... He doesn't specifically... Yes or no? Is there or isn't there? He doesn't specifically mention it, but... Well, isn't that... Tell us what the judge had in... If the judge doesn't mention it... I mean, this is a judge. We're not talking about a jury being the trier effect. This is a judge. And we're going to speculate when we know what the judge said, and there was no reference to it whatsoever. But the presumption that the judge only considered proper evidence is rebutted here because there were numerous objections to this evidence and that he overruled it every time. And Naylor holds that it can't be presumed that evidence didn't enter the judge's consideration, even if he doesn't mention it in his findings, if he allowed in evidence. And even further, where the judge actively participates in the process... And what are you relying on for that? And also, that's also in People v. Naylor. And also, whether or not it's closely balanced is only one of the five factors that this court should consider as to whether or not this is... But why don't you take a minute now... Whether or not the state can... Why don't you take a minute now and go through the five factors that choose to determine whether or not there, in fact, is a DOLE violation? Yep. They're outlined in People v. Dameron. I realized that one. The first factor is who elicited the testimony. What was that? I have the case in front of me. I realized that they're outlined there. I'm asking you to go through each one and analyze each one based on the facts. Right. So the first factor, the state elicited this testimony. It wasn't in response to defense counsel's questioning. The purpose of this questioning was to attack Mr. Savage's credibility in a case where credibility was the most important determination for the judges to make. The third factor, the state relied on this improper impeachment during closing to attack Mr. Savage's credibility. The fourth factor, the judge had plenty of opportunity to omit the improper evidence as the defense counsel objected four times. And the error was detailed in a motion for a new trial, which he denied. And then the fifth factor is kind of what we've been talking about, the quantum of evidence. And basically that comes down to whether or not it was closely balanced. And then move on to your next point. How did the judge participate? So the judge, so there were numerous objections in the judge. Basically, Mr. Savage answered the question. He said, I didn't tell the detective anything. The judge said, you have to like, and I quote, twice, he said, you have to answer it. And he also said, this calls for a yes or no answer. You have to give a yes or no answer when Mr. Savage was providing an answer to the question. So yeah, the judge's participation in this questioning does further rebut the presumption that he only considered proper evidence. So this court has held this type of impeachment inappropriate and in a violation of a defendant's rights time and time again. In this case is no different. And the only remedy here is to reverse and remand for a new fair trial. And beyond the Doyle violation, Mr. Savage's trial was also tainted with improper impeachment evidence where the judge relied on inferences not proved up by the state in finding Mr. Savage not credible. So specifically during direct, Mr. Savage testified to an address that he was living at at the time of his arrest. My question with regard to the address is how does that have any materiality to this case? So the materiality comes into play in the judge's findings. The judge, and I'm quoting from him again, he said that the defendant testified he left from an address that he lived at which was inconsistent with the address that he had given police. Now that's important because it was never proven that Mr. Savage gave an inconsistent address to the police. And the fact, this is a very small trial. All of the errors are amplified. And the only other instance where he mentioned Mr. Savage was not credible. I don't understand that reference. What is, what are you referring to when you say that it was a small trial? Oh, it's just short. The, the testimony was, I think, less than 50 pages. So it was a, it was a um, an error such as this that shows up in the judge's findings is amplified, especially considering it was only one of two instances he cited for the defendant not being credible. That sounds like a pretty error-free trial to me. Isn't that the flip side of that? Um, well, I would, I would say that there were two pretty serious errors, both of which go to credibility. So, um, But isn't that the fact finder's call in this case, the judge? It, it is the fact finder's call regarding credibility, but the judge's findings are, um, are flawed in that he, you know, he allowed this improper evidence in, but also the judge said some things that are troublesome in a finding of fact for, like he said, it wouldn't have mattered if the defendant testified or not. Like, that's not really something you want to hear the finder of facts saying that basically Wouldn't that be a reference to the overwhelming nature of the evidence? Um, I didn't, the evidence here isn't, isn't overwhelming. It's Well, that's what you say, but couldn't that just have easily as easily been what he was referencing when he made that comment? Yeah, he, he also said things like the only way Mr. Savage's testimony could have been true is if the judge and Mr. Brown somehow conspired against him. And that's just a complete misunderstanding of the facts, because like I said, a simple explanation is Brown's vehicle was broken into. Um, and when he came down, Mr. Savage was the closest person and he assumed that was him that did it. This isn't a, this is not an open and shut case by any means. There's the problem that he has his property on his person. And again, it's, it's his property according to Brown. So if there's only, it goes right back to it's one person's word against another person's word. Brown's the only one saying that that's his property. There's nothing about this property that could be saying, and it's his property. It could, it's, they're just common items that anybody would have. It was a lighter, an e-cigarette and headphones. Anybody could have that in their pocket at any given time. Just because Brown says that those are his doesn't mean that they are. Why don't you now, let's assume I'll let you finish your thought. Go ahead. You can finish that thought. Then I have a question. Oh, I, I was pretty much done. It's just that, you know, just because he said that they were his doesn't, isn't proof beyond a reasonable doubt. Okay. And, and did you want to respond? Did you, you, you were both talking at the same time. I, I couldn't think justice that it was a credibility of the witness issue. Right. And like I said, yeah. And like I said, the credibility of Mr. Savage was attacked in two different instances improperly. And you know, when this is a contest of credibility, it's such a short trial. There's no extrinsic evidence pointing to either one, either story these errors are, are amplified. Okay. Thank you. I want you to walk us through the harmless error analysis, your arguments regarding that because you're, you're of course you're whether or not this was harmless error, because that, that would be the, the, the route that we would take in deciding whether or not there should be a reversal. So why don't you walk us through that? Specifically with the second issue as to both issues. The first issue that should come down through the Dameron factors, an analysis of those in determining whether or not the state can prove beyond a reasonable doubt that it wasn't harmless error. The second issue, I think it's hard to say that it wasn't harmless error because it shows up specifically in the judge's as he held this against him, an inference that the state didn't prove up. And that's exactly why the state has to prove up impeachment is to avoid the fact find a relying on a, an inference rather than the denial, which the denial is the evidence at this point. So it's, it's difficult to, to say that the second error is harmless because it shows right up in the judge's findings. Why would you say that in the second situation with the addresses that it's a clear and obvious here? It's, I would say it's a clear error because the state asked him a question with the intent to impeach him to show that he lied to the police officers at the time of the era at his arrest. Um, that, that implication was never proven up. So in the judge relied on it. That's, you know, it's, it seems like it, it would be a small error, but in, like I said, in such a short trial and it's credibility. No, there was an objection to that argument in the closing arguments, which the judge sustained. So I don't understand why you're saying he relied on it. There wasn't, um, I'm talking about the address issue right now. There was an objection to the Doyle violation in the closing arguments, not the, the state didn't mention the address in its closing arguments. Well, the address issue is somewhat inconsequential, particularly since the defendant admitted he lied about something else. I can't remember off the top of my head what it was, but yeah, he admitted that in the past he had used, um, certain aliases. So I guess that I don't share your view that that's a major issue. It, it is a major issue because the judge is specifically relying on an inference that the state didn't prove up that usually these cases come down to a jury trial and we're not sure whether or not what the jury found, but here the judge is listing it specifically as something that he considered to hold Mr. Savage not credible. What do you mean he mentioned it specifically? He said in his, in his findings, um, I've got the quote here. Um, the defendant, he left testified, the defendant testified he left from an address that he lived at, which is inconsistent with the address he'd given the police. But the defendant himself cleared up. I think if I'm recalling the transcript correctly, the, he explained what the discrepancy was. Now the judge was free to reject that, but, but that's out there in the record, his explanation for it. The explanation is to the state in his testimony, the, the, the only statement that the defendant was able to get through the numerous objections by the state was the fact that he used to live at this address. Right. Um, well, that doesn't, that doesn't mean what the judge still held that he lied to the police officer. Well, that's a bit of a stretch. I think, um, I, I guess, uh, agree to disagree, but I read the judge's findings and it's clear that he held this against him and his credibility. Um, and you know, this case is all about credibility. And when there's two violations such as this, either, um, singularly or cumulatively, it deprived Mr. Savage of a fair trial. So, um, unless there are other questions, um, closing, um, the only remedy either individually from the Doyle violation or the impeachment error or cumulatively, um, Mr. Savage was denied a fair trial. And the only remedy is to reverse and remand. Thank you. Okay. Again, Janet Mahoney on behalf of the people in the state of Illinois, there are two statements made by dependent at issue here. There was no pre-trial motion or a motion to suppress to, to preclude the use of either statement. The first statement was made at the scene of the crime. When defendant admitted Lee spoke to the police and claimed that Mr. Brown robbed him, but he did not tell the police that the items of police removed from his pockets belong to him. There is no Doyle concern with regard to this statement. The second statement or lack of a statement was made to a detective when defendant was in the hospital. There was no motion to suppress the statement and there was no motion to eliminate. Defendant testified that when he was at the hospital, he invoked his right to counsel the detective who had appeared in court when the case was set for trial, but was then continued, did not testify in this case. So there are possible Doyle and Quinonez concerns with regard to this hospital statement, possible concerns in closing the people referred to both statements, but the court sustained an comment on that hospital statement. So there are problems with the closing argument with regard to the statement that was made in the hospital, but automatic reversal is not required when there is a Doyle violation and automatic reversal is not required when there is an error in closing argument. To start the Doyle is a harmless beyond a reasonable doubt standard, and it employs the five factor analysis referred to already. If it is shown that his violation with regard to this Doyle was harmless beyond a reasonable doubt, then any error in the closing argument was harmless for the very same reasons. So to start with the quantum of the other evidence proving defendant's guilt weighs heavily against the defendant. Well, isn't it? Why do you go ahead? You can go to justice. He said, he said, take the case between brown and savage. Not, not completely because you have a car with the window broken out. I mean, that doesn't mean he did it. So you have Mr. Brown holding him on the ground when the police arrived, they had a fight. We know that. Right. And then you have the police going through the defendant's pockets. And as they're going through the defendant's pockets, he doesn't say, Hey, that's my stuff. Instead, Mr. Brown claims ownership of those items. And that right there was crucial to the evidence in this case. Well, but did he also say that he was going in and out of consciousness? So the defendant mentioned that a few times. So, so in addition to that, if the officers were going through his pocket, of course, it's his stuff is in his pocket. If you take it, it also takes my wallet out of my pocket. I'm not going to say, Hey, that's my wallet or, Hey, that's my ring you've made sense that the defendant would say that. So it seems to me that it is a, he's he said, she said, or he said, he said situation. He said that that's his stuff, but the defendant is not going to say anything because obviously it's his stuff. It's come out of his pocket. So maybe he didn't say anything at all. That is not entirely true. And that is an inference that was for the driver. Tell me what's true then. What is true is that the defendant was found inside mr. Brown's car, that mr. Brown wrestled him to the ground and was holding him there when the police arrived and that when the police went through his pockets and removed those items, who else besides the complaining witness stated that he was in mr. Brown's car because the police didn't see him in the car. And if what's my understanding, the, the, the person that he visited that morning, that the complainant witnesses visited that morning didn't testify. Is that correct? That's correct. We only had the testimony, right? But, but that person could have been called and I don't want to say he or she, because I don't know whether that person was male or female, but the person who, who allegedly called nine one one and got the police there within a few minutes, never testified. So the only person who says that he, he was in the car and mr. Brown, the, the complaining witness says that he pulled him out of the car, which sounds a little weird to me that he pulled him out of a broken window of a car, but that's what the testimony seems to be from, from the, from the complaining witness. Well, it sounds to me that we're engaging in a reasonable hypothesis with innocence discussion right now. Well, I'm sorry. Sorry. I lost you, but you're back. So it sounds as if we're engaging in this reasonable hypothesis of innocence discussion right now as to what would a reasonable person do if they were in the same situation. But what we have here is we had a trial court who, who observed these witnesses testify. And at the end, what he said after watching them testify is that our complaining witness, our victim is absolutely credible quote, absolutely credible. And that defendants quote story story was incredible. So in addition to those credibility determinations made, made by the trial court, we have the corroboration of the police who said, we went through his pockets. We took these items out and defendant didn't claim ownership of anything they were taking from him. And so defendants testimony. So now you get to a point that a defendant who decided to just remain silent and not say anything to the police, his silence is being used against him. That's exactly where you're going with this. Because if the police has taken my wallet out of my pocket, I'm supposed to say, officer, that's my wallet officer. Those are my, my ear pads. So I'm not, I don't have to say anything to the police. This isn't it. This statement, this very first statement on the crime scene is not a Doyle violation. And you're, you're in violation. Are you arguing that it's a, it's a harmless error analysis and that the error is harmless. I'm arguing that if there was a Doyle violation, it had to do with the hospital statement, you are backing up to the safe statement on the crimes at the crime scene. There was no Doyle violation there. And we can use defendants failure to say anything to the police officers at that time as evidence corroborating the victim's testimony, no Doyle violation, their possible Doyle violation with the statement at the hospital and error and closing argument for referring to that statement in the hospital because we left defendants testimony unrebutted on that point. And that's where the harmless error discussion is going. And yes, we can use the silence at the time that the police went through his pockets. Absolutely. We can use that evidence to corroborate the victim. What's your explanation that the state intended to call the detective? And then for whatever reason, they just never did. That's what it appears from on the record because the detective did show up in court on one of the dates that was set for trial. And then it was continued. And then for whatever reason, he was never called. And remember, this bench trial took place on two dates, two months apart. So again, it appears as if it's an oversight. It doesn't appear as if it's intentional, malicious, and nefarious in any way, shape or form. And that's why we should be engaging in a discussion about was this argument is I think that or maybe that's not your argument, but had they called the detective and then perfected the impeachment that that would not have been a violation that you're in it, you're able to do that based on the case law under these circumstances. It's highly possible. Again, we don't have that in the record. It's highly possible. Again, just by a comment that the state made during the motion for new trial about it that the defendant was talking to the police at the hospital. You're conceding that that was an error, but you think it was harmless based on the totality of these circumstances? Correct. Correct. So getting back to our argument here, it was defendant's failure at the crime scene to claim the ownership of the items as a police room from his pocket. That was what was relevant and not a doyle violation. Um, and, and it was minimal about anything he may have said or not said in terms of how this played into this, this trial and the finding of guilt. Also keep in mind that the questioning by the state about defendants, lack of statement to the detective was brief. Um, again, quite possibly directed at something that was immiscible in it. And again, the statement at the hospital or lack of statement was merely duplicative of what defendants said and did not say at the crime scene. Also, this court touched on, um, that this was a bench trial and that the court here is presumed to know the law and apply it properly. A council made, um, argument about how the court was complicit in the, in the introduction of this what is happening here when the state is questioning the defendant about the statement, the court doesn't know it's possibly not a doyle violation. So the state court is allowing the state to elicit this information. The state, the court didn't know that the defendant would provide testimony. He invoked his right to counsel. The court didn't know the state would not produce evidence that rebutted defendant's testimony. And it was reasonable for the court in this bench trial to allow the state to question defendant at this point. So the court wasn't complicit in this error. Um, and then in closing argument, yes, the state of the court sustained the objection to the argument when the state was referring to that statement made in the hospital or lack of statement, um, that was made in the hospital. How, you know, I was judge sustains the objection. I would agree. It appears on the face that it's possible that he was returning to that same argument. But I'm also going to point you to something else. He said he does return to defendant admits he spoke to the detective and did not tell him. But then he continues and argues that if somebody had done this to you, wouldn't you complain about it? First opportunity you got. So it's he's arguably making a reference, arguably making a reference to defendants conversation with the police on the scene and that this comment there would be proper. However, when the court, as you noted during council's argument, when finding defendant guilty, the court did not mention any possible statement defendant made to the police while in the hospital. Importantly, the court stated that its decision would be the same regardless of their defendant did or not did or did not testify. And this is not troubling because the victim in this case, Mr Brown, was absolutely credible. So the record shows the court did not consider evidence of what defendant did or did not say to a detective at the hospital when finding defendant guilty. And for that reason, doesn't the record reflect that the findings that the defendant gave the police officers a wrong address, but the police officer never testified to what address was given. So to that extent, that the judges are lying on evidence that was that was or information I should say that was never in evidence. And yet, using that to rebut something that came into evidence that was totally unrebutted. So explain how do we get around that? Because the judge in his in his findings lets us know that he's he's basically there's evidence that's in the record that he's decided to ignore that evidence, which has been unrebutted. And then he's relying on evidence that's not in the record. So with regard to the address on cross examination, the state asked, Did you give the police in the address of 44 West 112 clicks? Defendant answers? No, I thought he said I never said anything to the police. I never gave them anything. He said no. It's on page 1 36 to 1. Question was asked because at one point the judge ordered him to answer. But go ahead. You can continue. Then I'm redirect examination. He was questioned about that, and he testified that he had an idea on him at the time of arrest that had the address 44 West 112 place. So there's how we get how the police got the address 44 West. He also told the officer that he lived there. He testified that he told the officer that he lived there. But then he testified that he did not tell the officer he lived there on the night of the crime. So in other words, the defendant himself provided whatever clarification needed to be made on this issue of the address in his redirect examination. There was nothing more for the state to do with that. And as a matter of fact, as Justice Kylin stated, it was up for the court to wait at that point. And in fact, the state didn't even rely on that in their closing argument and just left it there. So there was no error with regard to any possible impeachment here. Where defendant admitted his I. D. Stated he lived at that other location and that he told the officers that he had lived there. He just didn't say he lived there on the night of the crime. Unless there are any other questions, the people asked that you affirm the conviction and sentence in this case. Yep. I just have a couple points on rebuttal. First of all, whether or not there was a pre-trial motion to exclude Doyle violations, that's not really something that would need to be filed because it's improper evidence. So you don't have to file motions to keep improper evidence out of a trial. And with regards to what the detective may or may not have said, we can't assume anything as to what was said to the detective or what was not said to the detective because the state, like you said, they failed to call him. And counsel refers to the questioning over the interrogation at the hospital as brief. This testimony covered three pages. It was anything but brief. It approached 10% of the actual questioning in the trial transcript. It wasn't quite 10%, but when there's three pages of testimony about something in a trial, that's about 50 pages. It can't be considered brief by any means. And with regards to the fact that the judge didn't know where this testimony was going to go, it was pretty clear right when the questioning started. The state is asking him, why didn't you tell, did you tell the detective anything? Objection. That was right at the beginning of the three pages. So it's pretty clear where this was going to go. Also, the last point is that counsel referred to the defendant testifying that this address was on his identification. A close reading of the transcript shows that that testimony was objected to by the state and the judge sustained it. So the state actively sought to exclude the fact as to what was on his identification from the trial. So we can't really use that now to say, oh, well, it's proven up because the state previously had sought to exclude that evidence. With that, unless you have any other questions, again, I would just ask for a reverse and remand either singularly or cumulatively considering both of these issues. All right, Ms. Mahoney and Mr. Moore, great job. Excellent argument, excellent briefs. We appreciate both of you and we appreciate your excellence. So thank you both and have a good day.